IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAPITAL FUNDING, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MENACHEM TRESS, and ELIMELECH TRESS,<br><br>　　　　Defendants. | Civil Action No.<br><br>COMPLAINT |

**COMPLAINT**

Plaintiff Capital Funding, LLC ("Lender"), by and through its undersigned counsel, hereby files this Complaint against Defendants Menacham Tress ("Menachem") and Elimelech Tress ("Elimelech" and together with Menachem, "Guarantors"), and in support thereof, aver as follows:

**NATURE OF THE ACTION**

1. This action involves claims for breach of guaranty arising out of borrower Lennox Apartments Gem LLC's ("Borrower") defaults under a term loan issued by Lender in connection with Borrower's purchase of certain real property located in Philadelphia, Pennsylvania.

2. Pursuant to the terms of the Guaranty (defined below), Guarantors, who are the principals and owners of Borrower, absolutely and unconditionally guaranteed to Lender "due and punctual payment" of all Borrower's monetary obligations as well as performance of all terms, covenants, agreements, and conditions in the Loan Documents (defined below).

3. Guarantors' obligations under the Guaranty are triggered, *inter alia*, where either Guarantor causes Borrower to contest the validity or enforceability of the Loan Documents (defined below) or otherwise asserts defenses to Lender's exercise of its rights and remedies thereunder.

4. At the time they entered into the Guaranty, Guarantors expressly acknowledged that they directly benefit from Lender's making the Loan to Borrower. Guarantors further acknowledged and agreed that Lender's willingness to loan funds to Borrower was conditional on Guarantors' execution and delivery of the Guaranty. Yet, Guarantors first caused Borrower to default on its Loan Obligations and then, when Lender proceeded to exercise its remedies on account of Borrower's defaults, caused Borrower to contest the validity and enforceability of the Loan Documents to seek to avoid Borrower's respective financial obligations to Lender altogether.

5. Specifically, Borrower failed to pay make its monthly payment due on March 1, 2024. Borrower has since failed to make each of the monthly payments due in the ensuing months.

6. As a result of Borrower's continuing defaults under the Loan Documents, on or about June 18, 2024, Lender commenced a mortgage foreclosure action against Borrower.

7. In response, on July 22, 2024, Guarantors caused Borrower to file certain counterclaims contesting the validity or the enforceability of the Loan Documents and asserted defenses intended to delay, hinder and impair Lender's exercise of its contractual rights and remedies, thereby triggering Guarantors' payment obligations under the Guaranty.

8. Accordingly, Lender brings this action on the Guaranty to recover monetary damages from Guarantors.

**PARTIES, JURISDICTION AND VENUE**

9. Lender is a Maryland limited liability company having its principal offices at 2455 House Street, Baltimore, Maryland 21230. Lender's sole member is CFG Bank, a Maryland state-

chartered bank with a principal place of business located at 1422 Clarkview Road, Baltimore, Maryland 21209.

10.     Defendant Menachem Tress is an individual and, upon information and belief, a resident of the State of New Jersey with a principal place of residence at 4 Cameo Ridge Road, Monsey, New York 10952.

11.     Defendant Elimelech Tress is an individual and, upon information and belief, a resident of the State of New Jersey with a principal place of residence located at 40 High Street, Lakewood, New Jersey 08701.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a). The amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship.

13.     This judicial district is the proper venue for this proceeding pursuant to 28 U.S.C. § 1391 as the judicial district in which a substantial part of the events or omissions giving rise to Lender's claim occurred and because the property subject to the underlying commercial mortgage loan documents is located at 234-242 West Walnut Lane, Philadelphia, Pennsylvania, 19144 (the "Property").

14.     Defendants are subject to personal jurisdiction in this Court in their capacity as principals of Borrower, the current owner of the Property and obligor under the Note and Loan Documents (defined below). Defendants entered into the subject Guaranty (defined below), in their personal capacities, for the express purpose of inducing Lender to enter into the Loan Agreement and the other Loan Documents, and to make the Loan (defined below) in connection with the Property located within Pennsylvania. Based on the foregoing, Defendants are subject to personal jurisdiction in this Court.

## **GENERAL ALLEGATIONS**

**I.  Lender and Borrower Enter into Loan Agreement to Facilitate Borrower's Acquisition of the Property**

15.  On or about July 6, 2022, Lender issued to Borrower a commercial mortgage loan in the aggregate principal sum of up to $20,910,000 (the "Loan") for the purpose of financing the Borrower's acquisition of the Property. The Loan is evidenced by a Note dated July 6, 2022, executed by Borrower in favor of Lender (the "Note"), a copy of which is attached hereto as **Exhibit A**.

16.  To secure repayment on the Note, Borrower executed in favor of Lender a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") dated as of July 6, 2022 and secured by the Property. The Mortgage, a copy of which is attached hereto as **Exhibit B**, was electronically recorded on July 12, 2022, to Document No. 54068996 in the Department of Records of Philadelphia County, Pennsylvania.

17.  Additionally, Borrower executed in favor of Lender an Assignment of Rents and Leases (the "Assignment"), extending additional collateral rights to Lender. The Assignment dated June 23, 2022 and effective as July 6, 2022, was electronically recorded on July 12, 2022 to Document No. 54068997 in the Department of Records of Philadelphia County, Pennsylvania.

18.  The Loan is also evidenced by a Loan Agreement executed by Borrower in favor of Lender, dated as of July 6, 2022 (the "Loan Agreement"), a copy of which is attached hereto as **Exhibit C**. The Note, the Mortgage, the Loan Agreement, the Assignment and various other documents executed by Borrower in favor of Lender with respect to the Loan are collectively referred to herein as the "Loan Documents."

**II.     Guarantors Execute Guaranty in Favor of Lender**

19.     To induce Lender to enter into the Loan Agreement and the other Loan Documents, and to make the Loan, Guarantors, principals of Borrower, executed a Guaranty dated July 6, 2022 (the "Guaranty"), a copy of which is attached hereto as **Exhibit D**.

20.     In the Guaranty, Guarantors acknowledged that they are the collective "owner of a direct or indirect interest in Borrower, and [that they] will directly benefit from Lenders' making the Loan to Borrower, and as a condition to the making of the Loan to Borrower pursuant to the Loan Agreement, [they have agreed] to execute and delivery this Guaranty."  (Guaranty, at 1).

21.     Pursuant to the Guaranty, Guarantors unconditionally and absolutely guaranteed to Lender, its successors and assigns, certain "Guaranteed Obligations" defined as follows:

> (i) the *due and punctual payment and performance when due of the Loan Obligations and any and all other monies and amounts due* or which may become due on or with respect to any of the foregoing, and the due and punctual performance and observance by Borrower and Guarantor, and any other guarantor or surety with respect to the Loan Obligations, of all of the other terms, covenants, agreements and conditions of the Loan Agreement and the other Loan Documents, in any case whether according to the present terms thereof, at any earlier or accelerated date or dates or pursuant to any extension of time or to any change in the terms, covenants, agreements and conditions thereof now or at any time hereafter made or granted, (ii) *all liabilities and obligations of Guarantor hereunder* and under the Loan Documents to which it is a party, including without limitation any pledge agreements, and (iii) *all costs, expenses and liabilities* (including, without limitation, *reasonable attorneys' fees and expenses*, documentation and diligence fees and legal expenses, and search, audit, recording, professional and filing fees and expenses) that may be incurred or advanced by Lender in any way in connection with the foregoing and/or otherwise required to be paid by Borrower under the Loan Documents and/or Guarantor hereunder [] up to fifty percent (50%) of the original maximum principal amount of the Note. Guarantor acknowledges that this Guaranty shall be deemed a continuing guaranty of the Guaranteed Obligations under the Loan Documents.

(Guaranty § 2) (emphasis added).

22. The Guaranty expressly provides that it is a guaranty of payment and not a guaranty of collection, and continues:

> *If any of the Guaranteed Obligations are not satisfied when due, whether by acceleration or otherwise, Guarantor shall forthwith satisfy such Guaranteed Obligation, upon demand*, and no such satisfaction shall discharge the obligations of Guarantor hereunder until all Guaranteed Obligations have been indefeasibly paid in cash and performed and satisfied in full and the Loan Agreement terminated. *The liability of Guarantor under this Guaranty shall be joint and several and primary and direct and not conditional or contingent upon the enforceability of any obligation, the solvency of Borrower or any other Person, any obligation or circumstance which might otherwise constitute a legal or equitable discharge or defense of a surety or guaranty or the pursuit by [Lender] of any remedies they may have against Borrower or any other guarantor of the Guaranteed Obligations or any other Person*. Without limiting the generality of the foregoing, [Lender] shall not be required to make any demand on Borrower or any other guarantor of the Guaranteed Obligations or any other Person or to sell at foreclosure or otherwise pursue or exhaust its remedies against any Collateral of Borrower or any other guarantor of the Guaranteed Obligations or any other Person before, simultaneously with or after enforcing its rights and remedies hereunder against Guarantor, and any one or more successive and/or concurrent actions may be brought against Guarantor in the same action brought against Borrower, or any of them, or any other guarantor of the Guaranteed Obligations or any other Person or in separate actions, as often as Agent may deem advisable, in its sole discretion. The obligations of Guarantor hereunder shall not in any way be affected by any action taken or not taken by [Lender], which action or inaction is hereby consented and agreed to by Guarantor, or by the partial or complete unenforceability or invalidity of any other guaranty or surety agreement, pledge, assignment, Lien or other security interest or security for any of the Guaranteed Obligations or of the value, genuineness, validity or enforceability of the Collateral or any of the Guaranteed Obligations. *The liability of Guarantor hereunder is absolute and unconditional irrespective of the taking or accepting by Lender of any other security or guaranty for, or right of recourse with respect to, any or all of the Guaranteed Obligations*.

(Guaranty § 3) (emphasis added).

23.     Guarantors expressly waived "setoff, counterclaim, presentment, protest, notice of dishonor or nonpayment, as well as all defenses with respect to any and all instruments" and stated their intention that they "shall remain liable as a principal until the full amount of all Guaranteed Obligations shall have been indefeasibly paid in full in cash and performed and satisfied in full and the Loan Agreement terminated, notwithstanding any act, omission, or anything else which might otherwise operate as a legal or equitable discharge of Guarantor." (Guaranty, § 5).

24.     In making the Guaranty, Guarantors expressly acknowledged and agreed they would "benefit from the execution, delivery and performance by [Lender] of the Loan Agreement and the other Loan Documents and the advancement of the term facility to Borrower and that the Loan by Lender constitutes valuable consideration to Guarantor". (Guaranty § 10(a)).

25.     Guarantors further expressly acknowledged and agreed that the Guaranty was intended to be an inducement to Lender to enter into the Loan Documents, and that Lender relied upon the Guaranty in making and advancing the Loan to Borrower. (Guaranty § 10(b)-(c)).

26.     Pursuant to the Guaranty, Guarantors' obligation to pay the Guaranteed Obligations is triggered where:

> (v) Guarantor contest[s] or direct[s] any third party to contest the validity or the enforceability of any of the Loan Documents and/or assert[s] defenses for the intent of delaying, hindering or impairing the exercise of Lender's rights or remedies thereunder….

(Guaranty § 21).

27.     Finally, pursuant to § 13 of the Guaranty, Guarantors agreed to:

> [P]ay all costs and expenses incurred by [Lender] or any of their Affiliates, including, without limitation … reasonable attorneys' fees and expenses (a) in any effort to enforce this Guaranty, any other Loan Document and/or any related agreement, document or instrument, or to effect collection hereunder or thereunder … (d) in connection with instituting, maintaining, preserving and enforcing [Lender's] rights hereunder and/or under all related agreements,

> documents and instruments, (e) in defending or prosecuting any actions, claims or proceedings arising out of or relating to this Guaranty and/or any related agreement, document or instrument, (f) in seeking or receiving any advice with respect to its rights and obligations under this Guaranty, any of the other Loan Documents and/or all related agreements, documents and instruments…

(Guaranty § 13).

### III. Borrower Defaults on its Obligations Under the Loan Documents

28. The Loan Agreement defines the term "Loan Obligations" as follows:

> All present and future debts, obligations and liabilities of Borrower to Lenders arising pursuant to, or on account of, the provisions of this Agreement, the Note or any of the other Loan Documents, including the aggregate of all outstanding principal and all interest accrued and unpaid thereon owing from time to time under the Note and the other Loan Documents and all expenses, fees, charges and other amounts from time to time owing under the Note, this Agreement, or the other Loan Documents and the obligation to perform, observe and comply with all covenants, agreements and other obligations from time to time owing to, or for the benefit of, Lenders pursuant to the Loan Documents.

(Loan Agreement § 1.1.)

29. Borrower's Loan Obligations included the requirement to make certain monthly payments to Lender on the first day of each calendar month, and to pay certain late fees if payment is not made within five days of being due. (Loan Agreement § 2.1(c)(viii).)

30. On March 1, 2024, Borrower was required to remit payment to Lender in the amount of $222,720.22. Borrower, however, failed to make such payment on that date and has failed to make any further payment to Lender since February 12, 2024.

31. Borrower's failure to pay to Lender Loan Obligations constitutes an Event of Default under § 8.1(b) of the Loan Agreement.

32. Under the Acceleration of Maturity clause in the Mortgage:

8

> If an Event of Default shall have occurred, then the entire Debt (and all other Loan Obligations) shall, at the option of Agent, immediately become due and payable without notice or demand, time being of the essence of this Security Instrument, and no omission on the part of Agent to exercise such option when entitled to do so shall be construed as a waiver of such right.

(Mortgage, § 17(a).)

33. Accordingly, on April 5, 2024, Lender provided Borrower with a written notice and demand advising of Borrower's Event of Default under the Loan Agreement and Note, a copy of which is attached hereto as **Exhibit E**, and also advising of Lender's demand for immediate satisfaction of all outstanding amounts due and owing by Borrower under the Loan Agreement and Note.

34. On May 3, 2024, Lender provided Borrower with a second written notice and demand advising of Borrower's Event of Default under the Loan Agreement and Note, a copy of which is attached hereto as **Exhibit F**, advising of Lender's right to acceleration and demand for immediate satisfaction of all outstanding amounts due and owing by Borrower under the Loan Agreement and Note.

35. On May 28, 2024, Lender provided Borrower with a third written notice and demand advising of Borrower's Event of Default under the Loan Agreement and Note, a copy of which is attached hereto as **Exhibit G**, advising of Lender's right to acceleration and demand for immediate satisfaction of all outstanding amounts due and owing by Borrower under the Loan Agreement and Note.

36. On June 13, 2024, Lender provided Borrower with a fourth written notice and demand advising of Borrower's Event of Default under the Loan Agreement and Note, a copy of which is attached hereto as **Exhibit H**, advising of Lender's acceleration and demand for

immediate satisfaction of all outstanding amounts due and owing by Borrower under the Loan Agreement and Note.

37. The Guarantors received each of the foregoing notices.

38. Notwithstanding the notices of default and acceleration, to date, Borrower has failed to pay the Loan Obligations in full or otherwise cure the ongoing Event of Default.

39. The amount due and owing to Lender under the Loan Agreement is a sum certain and readily ascertainable from the Loan Agreement and the documents submitted herewith establishing the Exit Fee.[1]

40. As of August 5, 2024, the following amounts are due and owing by Borrower under the Note and Mortgage, without defense, deduction, offset, recoupment, or counterclaim:

| | |
|---|---|
| Principal: | $20,859,885.51 |
| Interest Accrued Through August 2, 2024: | $887,725.69 |
| Default Interest Accrued Through August 2, 2024: | $790,937.30 |
| Late Fees: | $90,290.46 |
| Exit Fee: | $208,598.85 |
| Legal Fees: | ~$50,000.00 |
| Appraisal Fee: | $8,000.00 |
| **TOTAL**: | $22,889,437.81 |

41. Accordingly, as of August 5, 2024, Borrower owes Lender $22,889,437.81, plus continuing interest ($9,723.02 per diem), costs as allowed by law and reasonable attorneys' fees under the Loan Documents. (*See, e.g.*, Mortgage § 1.3(a).)

---

[1] All capitalized terms used herein, to the extent not otherwise defined herein, have the same meanings as defined in the Mortgage, the Note and the Loan Agreement

**IV. Guarantors Trigger Their Guaranteed Obligations by Causing Borrower to Contest the Validity of the Loan Documents and Delaying Lender's Exercise of Remedies Under the Loan Documents**

42. As a result of Borrower's defaults, on or about June 18, 2024, Lender commenced a foreclosure action against Borrower in the Court of Common Pleas for Philadelphia County, Pennsylvania (the "State Action").

43. Lender then moved in the State Action for appointment of a receiver to preserve the Property pending completion of the foreclosure process.

44. On or about July 15, 2024, Borrower removed the action to this Court, captioned: *Capital Funding, LLC v. Lennox Apartments Gem LLC*, C.A. No. 2:24-CV-03056-RBS (the "Federal Action").

45. Shortly thereafter, on July 22, 2024, Guarantors caused Borrower to file its Answer, Affirmative Defenses ("Affirmative Defenses"), and Counterclaims to Complaint (the "Counterclaims") against Lender. A true and correct copy of Borrower's Affirmative Defenses and Counterclaims is attached hereto as **Exhibit I**.

46. Borrower pled as affirmative defenses, *inter alia*, that Lender's claims were barred, released or waived by "one or more material breaches of the relevant agreements" and "by reasons of [Lender]'s fraudulent conduct." (Affirmative Defenses 5, 6.)

47. Borrower further asserted counterclaims against Lender for (i) fraudulent inducement, (ii) fraud, (iii) negligent misrepresentation, (iv) breach of the implied covenant of good faith and fair dealing, (v) breach of oral contract, (vi) promissory estoppel, and (vii) unjust enrichment. Specifically, as it relates to Borrower's fraud claims, Guarantors caused Borrower to allege that (A) Lender's statements in a pre-Loan term sheet purportedly fraudulently induced Borrower to proceed with the Loan altogether on the terms to which Borrower ultimately agreed

11

(Countercl. ¶¶ 31-36) and (B) that Lender purportedly defrauded Borrower during a February 8, 2023 discussion through misrepresentations concerning Lender's payment of all Borrower capital expenditures (Countercl. ¶¶ 38-46.)

48. Among other relief, Borrower demanded that the Court "enter judgement finding the Note unenforceable and void." (Countercl. at 20 "Relief Requested at (ii).)

49. Lender refiled its motion for appointment of a receiver in the Federal Action, and on August 19, 2024 (the "Receiver Motion"), Guarantors caused Borrower to oppose the Receiver Motion and Lender's exercise of that remedy using the same allegations and arguments that predicate Borrower's Affirmative Defenses and Counterclaims. A true and correct copy of Borrower's Opposition to the Receiver Motion is attached hereto as **Exhibit J**.

50. Borrower argued, *inter alia*, that it "is contesting [Lender]'s claim for default under the Loan Agreement and has filed counterclaims against [Lender] challenging its claimed default and the enforceability of the Mortgage and other loan documents." (Borrower Opp. at 12.) It expressly accused Lender of "jump[ing] the gun" in seeking the appointment of a receiver and asked the Court to deny or at least delay such judicial remedy until the completion of discovery and adjudication of its Counterclaims.

51. In Borrower's assertions of these claims, defenses, statements, and arguments, Guarantors triggered their Guaranteed Obligations under Section 21 of the Guaranty by "contesting or directing [Borrower] to contest the validity or the enforceability of any of the Loan Documents and[] asserting defenses for the intent of delaying hindering or impairing the exercise of Lender's rights or remedies thereunder." (Guaranty, § 21.)

52. Guarantors, therefore, must unconditionally and absolutely pay all monies due and owing under the Loan Agreements.

53. As of August 5, 2024, Guarantors owe Lender a total of $22,889,437.81, plus continuing interest ($9,723.02 per diem), costs as allowed by law and reasonable attorneys' fees.

54. Lender has fulfilled all of its obligations to Guarantors and has otherwise performed all acts necessary to preserve all of its rights under the Guaranty.

## COUNT I: BREACH OF CONTRACT

55. Lender re-alleges and incorporates by reference paragraphs 1-54 of this Complaint as if rewritten herein.

56. Lender is the holder of, relevantly, the Note, the Loan Agreement and the Guaranty. (*See* Exs. A, B & C.)

57. In order to induce Lender's consent to giving the Loan, on or about July 6, 2022, Guarantors executed, acknowledged and delivered to Lender the Guaranty. (*See* Ex. D.)

58. The Guaranty provides, among other things, that each Guarantor (each individually and collectively, together with their successors, assigns, heirs, executors, administrators and legal representatives, pursuant to the preamble of the Guaranty) would, subject to the provisions of § 21 thereof, unconditionally and absolutely guarantee payment to Lender of the Guaranteed Obligations. (*See id.* § 2).)

59. Section 21 of the Guaranty provides that Guarantors' Obligation to pay the Guaranteed Obligations shall occur where the "Guarantor(s) [are] contesting or directing any third party to contest the validity or the enforceability of any of the Loan Documents and/or asserting defenses for the intent of delaying, hindering or impairing the exercise of Lender's rights or remedies thereunder".

60. In breach of Section 21, Guarantors have filed counterclaims, asserted defenses, and undertaken actions contesting the validity and enforceability of the Loan Documents and

attempted to delay or impair Lender's exercise of rights and remedies under the Loan Documents as a result of Borrower's nonpayment defaults.

61. Lender, by contrast, has satisfied all of its obligations under the Guaranty or was otherwise excused from compliance under governing law.

62. As of August 5, 2024, Guarantors owes Lender $22,889,437.81, plus continuing interest ($9,723.02 per diem), costs as allowed by law and reasonable attorneys' fees. Neither Borrower nor Guarantors, however, has paid these amounts, which remain outstanding.

63. Accordingly, Lender is entitled to a judgment in its favor and against Guarantors (a) awarding damages in an amount not less than $10,455,000, together with pre- and post-judgment interest thereon as allowed by contract and applicable law; and (b) awarding all fees, costs, and expenses incurred in connection with this matter including, without limitation, all attorneys' fees, costs, and expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Capital Funding, LLC demands that the Court: (i) enter judgment in favor of Plaintiff and against Defendants Menachem Tress and Elimelech Tress jointly and severally in an amount not less than $10,455,000, plus interest accruing at the applicable judgment rate in effect from and after the date of judgment and additional attorneys' fees hereafter incurred; and (ii) grant Plaintiff such other and further relief as the Court deems just and proper under the circumstances.

                                                                                       By:    */s/ Benjamin Wilson*
                                                                                                   Benjamin R. Wilson
                                                                                                   **HOLLAND & KNIGHT LLP**
                                                                                                   1650 Market Street, Suite 3300
                                                                                                   Philadelphia, PA 19103
                                                                                                   (215) 252-9571
                                                                                                   benjamin.wilson@hklaw.com

                                                                                                   *Counsel for Plaintiff Capital Funding, LLC*

Dated: September 4, 2024